UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

DONALD ANDERSON,

        Plaintiff,

    v.

HEIDI MILLER, Oregon Department of Corrections (ODOC) Registered Nurse (RN); SAMANTHA BAILEY, R.N. OSP; SABRINA MCCAIN, OSP Chronic Pain Nurse; CHRISTOPHER DIGIULIO, M.D.; C. (FNU) COFFEY, OSP Health Services Manager; JOE BUGHER, ODOC Health Services Director; K. (FNU) STEPP, OSP Group Living; SAMANTHA BAILEY, Health Services; and (FNU) ALVIS, OSP Captain,

        Defendants.

Case No. 6:19-cv-00668-YY

OPINION AND ORDER

YOU, Magistrate Judge:

    *Pro se* plaintiff Donald Anderson is a person in custody of the Oregon Department of Corrections ("ODOC"), currently residing at the Columbia River Correctional Institution ("CRCI"). Plaintiff has filed an action pursuant to 42 U.S.C. § 1983, alleging his rights were violated under the First, Eighth, and Fourteenth Amendments due to defendants' refusal to move his cell from the third floor to the first floor. Compl. ¶¶ 135-40, ECF #1.

1 – OPINION AND ORDER

Defendants have moved for summary judgment (ECF #41). Plaintiff has not filed a response. For the reasons discussed below, defendants' motion is granted and this case is dismissed.[1]

## STANDARDS

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citing FED. R. CIV. P. 56(e)).

The court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Reasonable doubts as to the existence of material factual issue are resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified

---

[1] All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).

complaint as an opposing affidavit where, even though verification was not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Here, the court considers plaintiff's verified complaint (ECF #1), in evaluating the motion for summary judgment.

## DISCUSSION

Defendants present five arguments in support of the motion for summary judgment: (1) defendants did not violate plaintiff's Eighth Amendment right to be free from deliberate indifference to his serious medical need; (2) defendants did not violate plaintiff's First Amendment right to be free from retaliation for redressing his grievances through the courts; (3) there is insufficient personal participation by defendants Bailey, DiGiulio, Bugher, Alvis, and Coffey to establish liability under § 1983; (4) plaintiff's claim against defendants in their official capacity is barred by the Eleventh Amendment; and (5) defendants are entitled to qualified immunity. Mot. Summ. J. 2, ECF #41.

**I.      Background**

Plaintiff was admitted to ODOC custody on November 16, 2016. Declaration of Warren Roberts, M.D.[2] ("Roberts Decl.") ¶ 3, ECF #42. On April 10, 2018, ODOC transferred plaintiff from the Oregon State Correctional Institution ("OSCI") to Oregon State Penitentiary ("OSP"), where he resided until January 9, 2019, when he returned to OSCI. *Id.*

---

[2] Dr. Roberts is currently the Acting Medical Director of ODOC while defendant Dr. DiGiulio is on leave. Decl. Roberts ¶ 1, ECF #42.

Plaintiff has a history of leg pain. Compl. ¶ 19, ECF #1. He had his left hip replaced in 2007 and again in 2011, he fractured his left knee in a car accident in 2015, and he has osteoarthritis in his right hip. *Id*. ¶ 33; *see* Roberts Decl. ¶ 7, ECF #42.

Upon arrival at OSP, plaintiff was placed on the third floor. Compl. ¶ 17, ECF #1; *see* Roberts Decl. ¶ 5, ECF #42. He "explained there must be some mistake . . . regarding his stair restrictions" and his placement on the third floor because "he was not suppose[d] to be using stairs because of his serious medical issues as they relate to his hips and knees." Compl. ¶ 17, ECF #1.

### A.     Medical Treatment History

On April 11, 2018, the day after he arrived at OSP, defendant Nurse Practitioner Miller ("NP Miller") and defendant Registered Nurse McCain ("Nurse McCain") signed physician's orders regarding a presentation to the Therapeutic Level of Care Committee ("TLC") for plaintiff to receive a right hip injection. Roberts Decl. ¶ 24, ECF #42.

On April 18, 2018, NP Miller saw plaintiff for the first time. Compl ¶ 26, ECF #1; Roberts Decl. ¶ 24, ECF #42. They discussed his medical history, medication renewal needs, desire for a no-stair restriction, and pending hip injection. *Id.* NP Miller noted she offered plaintiff placement on "3 or lower tier [due to] no 1st tier available," told him she was discontinuing his Norco prescription, discussed tapering Gabapentin, and offered Cymbalta, which plaintiff declined. Roberts Decl. ¶ 24, ECF #42.

On April 20, 2018, plaintiff received x-rays on both knees. *Id.* ¶ 25.

On April 24, 2018, plaintiff saw Nurse McCain. *Id.*; Compl. ¶ 28, ECF #1. Nurse McCain noted plaintiff "walks [with the] use of [a] cane, slow but steady." Roberts Decl. ¶ 25 ECF #42. Nurse McCain also noted plaintiff's priority is "to get on list for housing [with low or

no] stairs 'but [he doesn't] want to kick someone out, just get one when possible' and to get some medications to help with his pain." *Id.* Nurse McCain noted she would discuss housing and possible Naproxen prescription with NP Miller, and plaintiff agreed to be enrolled in medical yoga. *Id.*

On April 25, 2018, NP Miller noted that plaintiff was ordered to a "lower tier (3 bar and lower if available)" for one year and prescribed a six-month supply of Nabumetone for pain. *Id.*

On June 13, 2018, plaintiff went to Hope Orthopedics to receive his right hip injection, where the provider recommended a "ground level cell, avoid stairs, and send to Dr. [John] Coen [to] discuss [right] Total hip [replacement]." *Id.* ¶ 28. In response to the recommendation, OSP medical staff commented: "Housing and other restrictions are a primary care responsibility in ODOC." *Id.* NP Miller noted she would "'present to TCL for . . . total [right] hip replacement per Hope Ortho [with] Dr. Coen[,]' but the committee referred her to the previous TLC decision from March 22, 2018 regarding specifications to re-evaluate this decision." *Id.*

On June 14, 2018, plaintiff met with Nurse McCain, stating he was "unhappy [with] plan for joint pain." *Id.* ¶ 30. Nurse McCain "reviewed [with plaintiff] his options for [treatment] of [degenerative joint disease] and [told him] he need[ed] to work with staff for optimal outcome." *Id.* Nurse McCain noted plaintiff was "concerned with recent 'orders' from outside trip not being followed and presents letter from [Physician's Assistant ] Tommy Vu (Hope Ortho) and responses from Capt Alvis."[3] *Id.* Nurse McCain noted she would "take copies," find the "pink

---

[3] Plaintiff alleges: "On June 13, 2018, Tommy N. Vu, PA-C, of Hope Orthopedics of Oregon sent ODOC a memo stating that Plaintiff was 'under [his] medical care. Permanent restriction: Ground level cell and limited stair use.'" Compl. ¶ 66, ECF #1. Plaintiff alleges: "On August 23, 2018, Plaintiff sent Defendant ALVIS [a kyte] . . . stating that sending a [kyte] to Defendant BAILEY was futile because like all other Health Services staff members, she was not trying to help him. . . . Defendant ALVIS blithely directed Plaintiff to '[t]ell [Defendant BAILEY] what [his] issue' was." *Id.* ¶¶ 91, 92.

5 – OPINION AND ORDER

sheet" with the recent outside provider recommendations, and talk with NP Miller. *Id.*; *see* Compl. ¶ 66, ECF #1.

On the evening of June 14, 2018, plaintiff presented to the medical unit due to a fall because his "legs gave way." *Id.* ¶ 46, ECF #1; Roberts Decl. ¶ 30, ECF #42. The notes from that visit state: "no marks red/black [and] blue on [left] hip/buttock . . . moves extremity w/o difficulty." Roberts Decl. ¶ 30, ECF #42. Plaintiff requested an x-ray, was given an ice pack, encouraged to rest and to take Ibuprofen and Tylenol for pain, and told he would be given time off work. *Id.*

On June 16, 2018, plaintiff visited the medical unit, and it was noted he had no marks on his left hip area or left lateral thigh at the time he fell but now had a large purplish bruise on his left side and normal range of motion. *Id.* ¶ 31. Medical staff explained to plaintiff that the physician would need to see him and "then determine where he should be," and encouraged plaintiff to slow down and rest as much as possible. *Id.*

On June 17, 2018, plaintiff visited the medical unit, complaining of pain and inability to work, and requesting stair restrictions and hip x-rays. *Id.* ¶ 32. Medical staff noted bruises on plaintiff's left side, and that he had a "guarded" gait, used a cane, and "grimace[d] to sit and stand." *Id.* Medical staff told plaintiff to use hot and cold compresses, take over-the-counter pain medications, follow up with his provider to discuss an x-ray, and ordered him not to work. *Id.*

On June 19, 2018, plaintiff saw NP Miller and Nurse McCain. *Id.* ¶ 33. The purpose of the visit was for "unwitnessed fall 06/17/18" and to request "bottom tier per ortho consult." *Id.* NP Miller noted "[left] hip has bruising and tenderness, [patient] using cane and has limp," and she reviewed the form presented to the TLC for a possible right hip replacement. *Id.* NP Miller

6 – OPINION AND ORDER

ordered "Lower tier 3 or below (1, 2, or 3 tier may be used) x 1 year, . . . xr[ay] left hip . . . (per patient) (bruising) [and] no work." *Id.*

On June 22, 2018, plaintiff received pelvis and left hip x-rays. *Id.*

On June 23, 2018, plaintiff visited "sick call" regarding worsening pain after his fall, and the nurse there scheduled a visit with Dr. Paulson. Compl. ¶ 59, ECF #1.

On July 6, 2018, plaintiff went to the medical unit requesting a longer cane, which was issued immediately. Roberts Decl. ¶ 35, ECF #42. NP Miller and Nurse McCain also saw plaintiff, who requested pain medication and more time off work. *Id.* Because plaintiff had lost 34 pounds, NP Miller noted she would present to the TLC for plaintiff's right hip replacement. *Id.* NP Miller prescribed Notriptyline for pain and ordered no work for three months. *Id.*

On July 12, 2018, the TLC approved plaintiff's hip replacement. *Id.* ¶ 38. Nurse McCain told plaintiff of his approval for hip surgery the next day. *Id.*

On July 20, 2018, plaintiff met with NP Miller. *Id.* ¶ 39; Compl. ¶ 71, ECF #1. Plaintiff requested a back brace and a Baclofen, a muscle relaxant, and a transfer to the ground floor. Roberts Decl. ¶ 39, ECF #42. NP Miller instead offered Cymbalta, which plaintiff declined. *Id.*

On July 26, 2018, plaintiff visited the medical unit and stated he had lower back and left hip pain because of his fall and the medication prescribed (Relafen) did not work. *Id.* ¶ 41.

On August 1, 2018, plaintiff met with NP Miller, complaining of pain and that his medication did not work. *Id.* ¶ 42. NP Miller ordered three months of medical lay in and a left knee lidocaine injection. *Id.*

On August 15, 2018, NP Miller reiterated her notes from August 1 and also noted plaintiff could be moved if security had a lower tier available and that he is "physically able to do some stairs @ this time and needs to keep some kind of activity." *Id.*

7 – OPINION AND ORDER

On August 22, 2018, plaintiff moved from a third floor cell to a second floor cell. *Id.* ¶ 46.

On September 5, 2018, plaintiff met with outside provider Hope Orthopedics, who recommended "appropriate medication for pain, avoid stairs until after surgery, arrange for [right] total hip, ground level cell please." *Id.* ¶ 50. Medical staff wrote that the recommendations were noted and that "housing restrictions and pain management are primary care decisions in ODOC." *Id.*

On September 15, 2018, Nurse McCain advised plaintiff that his appointment with NP Miller was cancelled and explained NP Miller would see him if anything changes or for follow ups. *Id.* ¶ 52; Compl. ¶ 79, ECF #1. Nurse McCain discussed options for lowering plaintiff's discomfort, and plaintiff noted he was using his left knee brace and that "it helps[.]" Roberts Decl. ¶ 52. ECF #42.

On September 19, 2018, plaintiff saw NP Miller. *Id.* He complained of left hip pain, said he did not want to walk any stairs, and requested different pain medications. *Id.* ¶ 53. NP Miller noted plaintiff was able to lift himself on and off the exam table without difficulty. *Id.* NP Miller offered plaintiff other pain medications except Narcotics and Gabapentin; he declined. *Id.* They discussed plaintiff's move to the second floor. *Id.* NP Miller offered plaintiff a walker; plaintiff declined in favor of using his cane. *Id.* NP Miller noted plaintiff is "physically able to do some stairs and needs to keep some activity." *Id.* NP Miller also noted plaintiff has a long history of substance abuse including methamphetamine, acid, and marijuana, and told him she would be unable to have him completely pain free. *Id.* NP Miller repeated physician's orders to continue plaintiff's medical lay in for two months and that he "may still have occasional stairs—3, 2, 1 tier—[plaintiff] currently on 2 tier—few stairs—if security has another tier available then

security may move." *Id.* NP Miller also noted plaintiff had been offered and declined other pain medications so "he may use Relafen and OTC Tylenol." *Id.*

On September 26, 2018, and October 5, 2018, Nurse McCain saw plaintiff. *Id.* ¶ 55. She answered questions about his upcoming hip replacement surgery and gave him leg exercises to prepare for the surgery. *Id.*

On October 17, 2018, plaintiff saw NP Miller, requesting a different pain medication and a ground floor cell. *Id.* ¶ 58. NP Miller reiterated to plaintiff that he needed some activity to help heal after his upcoming hip replacement and that he should work on his muscles. *Id.* NP Miller noted plaintiff was physically able to use stairs, had one tier to traverse, and had been observed outside walking at a fast pace with his cane without any difficulty. *Id.* NP Miller reminded plaintiff, as a pending surgery patient, that he had extra time to walk to appointments if he needed it. *Id.*

On October 23, 2018, plaintiff met with Dr. Reed Paulson for a second opinion on his condition and care. *Id.* ¶ 61. Dr. Paulson noted plaintiff requested ground floor housing due to discomfort using stairs but had "no specific incapacity—able to do stairs, in fact was on 3 bar until recently, no recent injury." *Id.* Dr. Paulson further noted plaintiff "gets about briskly [without] hesitation, shows limp that I observed on control floor and street, [right] hip stable to stresses, complains to slightest unweighted movement, unable to passive flex beyond until I pointed out that he was just sitting in my chair at >90[degrees] as he leaned forward." *Id.* Dr. Paulson added plaintiff exaggerated symptoms until he pointed them out during the exam. *Id.* Dr. Paulson concluded a no-stair restriction was unnecessary, and "in fact maintaining strength is beneficial preop." *Id.*

On December 26, 2018, plaintiff received a total right hip replacement. *Id.* ¶ 68.

9 – OPINION AND ORDER

B.       Grievance History

Plaintiff sent numerous kytes[4] to the medical unit, NP Miller, Nurse McCain, Behavioral Health Services ("BHS"), and the security unit regarding his leg pain and desire to be moved to a cell on the ground floor. *E.g.*, Compl. ¶¶ 20, 21, 24, 25, 27, 29, 30, 31, 36, 37, 42, 47, 48, 51, 52, 55, 56, 77, 80, 89, 110, 111, ECF #1; Decl. Roberts ¶ 30, ECF #42.

On May 4, 2018, plaintiff submitted a grievance (OSP-2018-05-045) explaining his leg conditions, pain, and requesting a ground floor cell. Compl. ¶¶ 33, 34, ECF #1; *see* Roberts Decl. ¶ 27, ECF #42 (grievance received May 18, 2018). Defendant Bailey responded:

> [NP Miller] assessed your need[ ] for a stair restriction on 4/18/18 with you in clinic and extended orders for lower tier (3 and below), low bunk, cane and elevator pass for one year. Group Living has placed you into a housing assignment that meets these orders[.]

Compl. ¶ 44, ECF #1; Roberts Decl. ¶ 24, ECF #42. Plaintiff filed a grievance appeal. Compl. ¶¶ 63, 64, ECF #1; Roberts Decl. ¶ 36, ECF #42. Defendant DiGiulio responded:

> It is unfortunate you do not agree with ODOC's decision related to your lower tier restriction. At OSP, lower tier means 3 bar and below. According to your[ ] Primary Care Provider (PCP), your mobility allows you to facilitate the stairs at OSP as necessary to ensure your activities of daily living. The assessment and determination of your restriction considered your attendance with dining, medication line, yard, the activities floor, and religious services. You are restricted to a lower bunk and have a cane to help in your stability along with a knee brace (unloader). If you are struggling with managing your current surroundings, please inform your PCP so appropriate adjustments to your facility restrictions can be considered.
>
> It is noted that the Therapeutic Level of Care (TLC) committee approved a total hip replacement for you. Your initial consult for that surgery is pending.

---

[4] "A Kyte is an inmate communication form." *Galligar v. Franke*, No. 2:12–cv–01891–PKm 2015 WL 10373492, at *2 (D. Or. Dec. 28, 2015).

Compl. ¶ 83, ECF #1; Decl. Roberts ¶ 50, ECF #42.  Plaintiff submitted a second level appeal.

Compl. ¶¶ 93, 94, ECF #1; Roberts Decl. ¶ 48, ECF #42.  Defendant Bugher responded:

> You have been seen and evaluated for you concerns regarding your request to have ground level housing.  As mentioned in the answers to the other grievances and appeals your provider has evaluated your condition and feels that limiting you to ground floor housing is not indicated for your ongoing care at this time. Ms Miller feels you are physically able to navigate the stairs and that it is indicated to keep your activity levels up.  If you are struggling with managing your current surroundings, please inform your PCP so appropriate adjustments to your facility restrictions can be considered.

Compl ¶¶ 104, 105, ECF #1; Roberts Decl. ¶ 56, ECF #42.

On June 20, 2018, plaintiff submitted a grievance (OSP-2018-06-071) describing the injuries he sustained from his fall and requesting a ground floor cell.  Compl. ¶¶ 57, 58, ECF #1; *see* Decl. Roberts ¶ 34, ECF #42 (grievance received June 21, 2018).  Defendant Brown responded:

> Your provider evaluated your case and gave you low tier (3 bar and lower) and a low bunk. . . . Your provider will follow up with next steps.  Based on her evaluation, Ms. Miller did not feel you needed ground floor[.]

Compl. ¶ 67, ECF #1; Decl. Roberts ¶ 37, ECF #42.  Plaintiff filed a grievance appeal.  Compl. ¶¶ 73, 74, ECF #1; Decl. Roberts ¶ 40, ECF #42.  Defendant DiGuilio's response was identical to his response to grievance OSP=2018-05-045A.  Comp. ¶ 86, ECF #1; Decl. Roberts ¶ 61, ECF #42.  Defendant filed a second level appeal.  Compl. ¶ 91, ECF #1; Decl. Roberts ¶ 44, ECF #42.  Defendant Burgher's response was identical to his response to OSP-2018-05-045A.  Compl. ¶ 107, ECF #1; Decl. Roberts ¶ 56, ECF #42.

II.     **Plaintiff's Failure to File a Response**

Plaintiff has failed to file a response to defendants' motion for summary judgment.  This could be considered a  concession on the merits.  *See Steger v. Peters*, No. 6:16-cv-02093-YY, 2018 WL 3430671, at *2 (D. Or. July 16, 2018) (collecting cases and construing party's failure

to respond to a motion for summary judgment as "a concession on the merits"). Nevertheless, the court has examined the substance of plaintiff's claims and they lack merit, as discussed below.

### III. First and Second Claims: Eighth Amendment Deliberate Indifference to Medical Needs

In his first and second claims, plaintiff alleges that "[d]efendants' acts and omissions violated [his] right to be free from cruel and unusual punishments as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution."[5] Compl. ¶¶ 136, 138; ECF #1. Plaintiff alleges defendants' refusal to move him to the ground floor so that he would not have to climb stairs amounted to deliberate indifference to his "serious medical needs," which "result[ed] in the unnecessary and wanton infliction of pain" and "further significant injury[.]" Id. ¶¶ 115, 132, 134.

While plaintiff calls the first claim "Cruel and Unusual Punishment" and the second claim "Due Process," both claims are premised on "Plaintiff's right to be free from cruel and unusual punishments." Id. ¶¶ 135-38. Accordingly, the court analyzes plaintiff's claims under the Eighth Amendment.

#### A. Legal Standard

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citations and internal quotation marks omitted). "Thus, [courts] have held repugnant to the Eighth Amendment punishments which are

---

[5] Plaintiff calls the First Claim ("Cruel and Unusual Punishment") and the Second Claim ("Due Process"). Compl. ¶¶ 135-38, ECF #1.

incompatible with 'the evolving standards of decency that mark the progress of a maturing society.'" *Id.* (citing *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (collecting cases)).

The government must "provide medical care for those whom it is punishing by incarceration," and failure to provide that care may constitute an Eight Amendment violation. *Id.* at 103. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* at 106. "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds*, *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014).

To satisfy the objective component of the Eighth Amendment analysis, a plaintiff must show a deprivation that is "objectively, sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation and internal quotation marks omitted). "A deprivation is sufficiently serious when the prison official's act or omission results in the denial of the minimal civilized measure of life's necessities." *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009) (quoting *Farmer*, 511 U.S. at 834) (internal quotation marks omitted). A "serious medical need is present whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (citation and internal quotation marks omitted); *see McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled in part on other grounds*, WMX *Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (observing examples of serious medical needs include "[t]he

13 – OPINION AND ORDER

existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain").

To satisfy the subjective component, a plaintiff must show that the prison official was "deliberately indifferent" to a substantial risk of serious harm. *Farmer*, 511 U.S. at 834. When prison officials manifests indifference "in their response to the prisoner's needs . . . [by] intentionally denying or delaying access to medical care," the subjective component is met. *Estelle*, 429 U.S. at 104-05. Deliberate indifference in this context means that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this claim. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs." *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1081-82 (9th Cir. 2013) (citation omitted). Moreover, "[a] difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Hamby v. Hammond,* 821 F.3d 1085, 1092 (9th Cir. 2016) (citation and internal quotation marks omitted).

**B.    Analysis**

The parties do not dispute that plaintiff's knee and hip conditions constitute a serious medical need. *See* Mot. Summ. J. 14, ECF #41. At issue is whether defendants acted with deliberate indifference to plaintiff's serious medical need, *i.e.*, whether defendants "*chose* a

course of treatment and cell placement for Plaintiff [that] was medically unacceptable under the circumstances and Defendants *chose* this course in conscious disregard of the excessive risk of Plaintiffs health." Compl. ¶ 127, ECF #1 (emphasis added); *see* Mot. Summ. J. 13, ECF #41.

"[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment was medically unacceptable under the circumstances and was chosen in conscious disregard of an excessive risk to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (citation and internal quotation marks omitted). The subjective test "focuses only on what a defendant's mental attitude was." *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 839) (internal quotation marks omitted).

*Estelle* is illustrative of a situation where a plaintiff received medical care but characterized it as inadequate. In *Estelle*, the plaintiff had been seen by medical personnel 17 times over the course of three months; plaintiff complained of "lack of diagnosis and inadequate treatment of his back injury." 429 U.S. at 292.

> The doctors diagnosed his injury as a lower back strain and treated it with bed rest, muscle relaxants and pain relievers. Respondent contends that more should have been done by way of diagnosis and treatment, and suggests a number of options that were not pursued. . . . But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act.

*Id.*

Like *Estelle*, defendants never denied plaintiff medical care. In fact, plaintiff was seen at least 30 times by various medical personnel over the course of eight months. *E.g.*, Roberts Decl. ¶¶ 24, 25, 26, 28, 30, 31, 32, 33, 35, 38, 39, 41, 50, 52, 53, 55, 58, 59, 61, 68, ECF #42. Defendants responded to plaintiff's requests for a ground floor cell and alleviation of his chronic

15 – OPINION AND ORDER

pain by, *inter alia*, providing visits with OSP medical providers, responding to his grievances, taking x-rays, prescribing medication, administering injections, moving him to the second floor, and arranging for hip replacement surgery. Plaintiff does not dispute these facts. Indeed, plaintiff states he had appointments with and received care from defendants Miller and McCain and other medical personnel. Compl. ¶¶ 26, 28, 30, 32, 39, 50, 54, 59, 62, 65, 66, 70, 71, 72, 75, 79, 97, 102, 103, 111, ECF #1. He also states that he received responses to his kytes, grievances, and grievance appeals. *Id.* ¶¶ 22, 44, 67, 82, 83, 86, 104, 107, 113. Instead, plaintiff disagrees with an aspect of the care he received, *i.e.*, the denial of a no-stair restriction and, relatedly, defendants' failure to adopt "outside expert advice" recommending a no-stair restriction. *See* Compl. ¶ 122, ECF #1. However, plaintiff has presented no evidence that his treatment was "medically unacceptable." Plaintiff's belief that this denial constituted inadequate care is insufficient to support his Eighth Amendment claim. *See Toguchi*, 391 F.3d at 1058.

Moreover, plaintiff offers only his own conclusory statements that defendants "acted with deliberate indifference" and "in conscious disregard of the excessive risk of Plaintiff's health." Compl. ¶¶ 119, 132, ECF #1; *see Leer v. Murphy,* 844 F.2d 628, 634 (9th Cir. 1988) (holding conclusory allegations are insufficient to ward off a summary judgment motion; a prisoner must set forth specific facts as to each defendant's deliberate indifference.). Plaintiff has not submitted any evidence as to the subjective state of mind of any defendant, *i.e.*, there is no evidence that defendants acted with the subjective state of mind to deprive plaintiff of necessary care, or that any defendant denied, delayed or intentionally interfered with plaintiff's medical care. *See Hutchinson v. U.S.*, 838 F.2d 390, 394 (9th Cir. 1988).

By contrast, defendants offer plaintiff's medical (ECF #42-1), housing (ECF #42-2), and grievance records (ECF #42-3), and the 33-page declaration of Acting ODOC Medical Director

Dr. Roberts describing the sequence of the medical care plaintiff received in support of their argument that plaintiff

> received medically appropriate care; and certainly did not receive care that was medically unacceptable in not moving him to the ground floor; nor were his providers deliberately indifferent to a serious medical need. In fact, it is quite apparent that his care was thoughtful, tailored to his needs, conservative, and considered the objective of maximizing his mobility—or at least avoiding the diminishment of his mobility.

Roberts Decl. ¶ 6, ECF #42. The absence of any evidence from which a trier of fact could reasonably conclude that any named defendant was consciously aware of any excessive risk to plaintiff's health and deliberately disregarded that risk is necessarily fatal to plaintiff's Eighth Amendment claim.

In sum, defendants have submitted substantial evidence indicating they were not deliberately indifferent to plaintiff's serious medical needs. While plaintiff disagrees with the medical decision not to move him to the ground floor, there appear to be medically appropriate reasons for this decision, and, further, plaintiff has offered no facts to the contrary. Accordingly, defendants' motion for summary judgment is granted as to plaintiff's claims premised on violation of his Eighth Amendment rights.

## IV.   Third Claim: First Amendment Retaliation

In his third claim, plaintiff alleges defendants violated his constitutional rights "in retaliating against [him] for exercising his First and Fourteenth Amendment rights to redress his grievances[.]" Compl. ¶ 140, ECF #1.

A prisoner "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives to the corrections system." *Silva v. Di Vittorio*, 658 F.3d 1090, 1104 (9th Cir. 2010), *overruled on other grounds*, *Richey v. Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015). Included among those rights is the right to file prison

17 – OPINION AND ORDER

grievances without retaliation. *Id.* To prevail on this claim, a prisoner-plaintiff must show: (1) a state actor took some adverse action against the prisoner (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the prisoner's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (citation omitted).

Here, plaintiff fails to provide any evidence that any defendants took adverse action against him in response to either his filing of grievance forms or in response to this litigation. Plaintiff alleges: (1) he "expressed concern" that he would be retaliated against when submitting his May 4, 2018 Grievance Form (OSP-2018-05-045), and (2) "Defendants jointly and severally have retaliated against Plaintiff in denying him constitutionally adequate safety and medical care as a direct and proximate result of Plaintiff redressing his grievances in the courts." Compl. ¶¶ 7, 21, ECF #1. These barebones allegations do not specify any retaliatory adverse action taken against plaintiff. *See Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) (holding speculation that the defendants acted out of retaliation was not sufficient to defeat summary judgment).

Moreover, no evidence of retaliatory intent can be inferred from the facts. *See Brodheim*, 584 F.3d at 1269 (holding a plaintiff must set forth evidence showing that his treating physicians' chosen course of treatment and disability designation/accommodations decisions were medically unacceptable, or that his filing prisoner appeals "was the 'substantial' or 'motivating' factor behind the Defendant's conduct."). To the contrary, the undisputed facts show that throughout plaintiff's numerous complaints to prison staff, defendants responded to plaintiff's kytes and formal grievances, continued to examine and evaluate him, and continued to provide plaintiff with treatment and accommodations they deemed medically necessary.

In sum, plaintiff has failed to produce sufficient evidence to create a genuine issue of material fact as to any of the required elements of a First Amendment retaliation claim against any defendant. Accordingly, defendants' motion for summary judgment is granted as to this claim.

## V. Personal Participation Under § 1983, Eleventh Amendment Immunity, and Qualified Immunity

Defendants also contend that defendants Bailey, Alvis, DiGiulio, Coffey and Bugher are not liable under 42 U.S.C. § 1983 because they lack sufficient personal involvement,[6] that this suit is barred by the Eleventh Amendment,[7] and that all defendants are entitled to qualified immunity.[8] Mot. Summ. J. 11-13, 17-18, 18-19, ECF #41. Because the court grants summary judgment as to all of plaintiff's claims on the grounds that there is no evidence of any constitutional violation, it is not necessary to reach these arguments.

---

[6] Government officials sued in their individual capacities are not liable for actions of their subordinates under § 1983 on a respondeat superior theory. *Ashcroft v. Iqbal*, U.S. 1937, 1948 (2009); *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 U.S. at 1948.

[7] The Eleventh Amendment to the United States Constitution bars all suits brought in federal court against states and their agencies in the absence of consent by the state or express abrogation by Congress within its authority. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 53-54 (1996).

[8] Qualified immunity defense protects "government officials ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

19 – OPINION AND ORDER

**ORDER**

Defendants' Motion for Summary Judgment (ECF #41) is GRANTED. This case is dismissed with prejudice.

DATED  March 26, 2021.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge
